UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IGNACIO S. ALONZO GONZALEZ, | No. CV 18-3948-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| NANCY BERRYHILL, DEPUTY COMMISSIONER OF OPERATIONS FOR THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 11, 2018, seeking review of the Commissioner's[1] denial of his application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on May 29, 2018, and June 7, 2018. Pursuant to the Court's Order,

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations.

the parties filed a Joint Stipulation (alternatively "JS") on January 2, 2019, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

## II.
## BACKGROUND

Plaintiff was born on May 27, 1956. [Administrative Record ("AR") at 169.] He has past relevant work experience as a security guard. [AR at 31, 76-78.]

On September 23, 2014, plaintiff protectively filed an application for a period of disability and DIB, alleging that he has been unable to work since March 1, 2014. [AR at 26; see AR at 169-70.] After his application was denied initially, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 99-102.] A hearing was held on January 30, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf, with the assistance of a Spanish interpreter. [AR at 48-83.] A vocational expert ("VE") also testified. [AR at 52-53, 76-83.] On March 28, 2017, the ALJ issued a decision concluding that plaintiff was not under a disability from March 1, 2014, the alleged onset date, through March 28, 2017, the date of the decision. [AR at 26-31.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 1-8.] When the Appeals Council denied plaintiff's request for review on March 30, 2018 [AR at 1-8], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Id. (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry,

468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 1, 2014, the alleged onset date.[2] [AR at 28.] At step two, the ALJ concluded that plaintiff has the severe impairments of diabetes; hypertension; diabetic neuropathy; osteoarthritis of left

---

[2] The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. [AR at 28.]

4

shoulder; status post left shoulder surgery to repair rotator cuff full thickness tear; and obesity. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b)[4] as follows:

> He is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. He is limited to standing, walking and/or sitting for 6 hours in an 8-hour workday with normal breaks. He should never climb ladders, ropes or scaffolds or engage in overhead work with his left upper extremity. He is limited to bending, stooping, kneeling, crouching and crawling occasionally. He should avoid concentrated exposures to dust and fumes.

[AR at 29.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform his past relevant work as a security guard as generally performed. [AR at 31, 78-79.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of March 1, 2014, through March 28, 2017, the date of the decision. [AR at 31.]

# V.
# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she determined that plaintiff can perform his past relevant work. [JS at 4.] As set forth below, the Court agrees with plaintiff and remands for further

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

proceedings.

## A. THE ALJ'S STEP FOUR FINDING

Plaintiff was born in Mexico and completed only the first and second grades in Mexico. [AR at 55.] With the assistance of a Spanish interpreter at the hearing, plaintiff testified that he can only speak "[a] little bit" of English, and that he took the examination to become a security guard in Spanish. [AR at 55, 77.] He cannot read or write more than his name in English. [AR at 190.] A Spanish interpreter was also used during the May 28, 2015, consultative examination. [AR at 248.] At the hearing, the VE categorized plaintiff's past relevant work to be that of a security guard (Dictionary of Occupational Titles ("DOT") No. 372.667-038). [AR at 77-78.] Defendant presents no evidence to contradict plaintiff's testimony regarding his inability to read, write, and speak English.

During the hearing, the ALJ asked the VE whether a hypothetical individual of plaintiff's "age, education, and past relevant work background and vocation," with the RFC limitations found by the ALJ, could perform plaintiff's past work. [AR at 78-79.] The VE responded that some of the work plaintiff had previously done was at the medium exertional level, and the hypothetical individual could not perform those jobs, but could perform the security guard position as described in the DOT. [AR at 78-79, 80-81.] The ALJ also asked the VE if her testimony was consistent with the DOT, and the VE answered, "Yes, the way I categorized the work relative to these factors of no left hand use, five pounds, or using a footstool, or -- I already discussed overhead reaching, that is based on I looked at the job tasks, I looked at the *COJ*,[5] I then integrate my more than 25 years experience in casework and placement and job analysis and all that that entails and I think that summarizes that." [AR at 82-83.] Based on the rather convoluted testimony of the VE, the ALJ nevertheless determined that plaintiff could perform his past relevant work as a security guard as generally performed. [AR at 31.]

---

[5] The VE may have been referring to a publication similar to the Selected Characteristics of Occupations, the companion publication to the DOT.

6

## B. LEGAL STANDARD

Although the burden of proof lies with the claimant at step four, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). An ALJ's determination that a claimant has the RFC to perform his past relevant work must contain a finding of fact as to the physical and mental demands of the past job, and that the claimant's RFC would permit a return thereto. Soc. Sec. Ruling ("SSR")[6] 82-62; see also Soria v. Callahan, 16 F. Supp. 2d 1145, 1151 (C.D. Cal. 1997) ("At step four, the ALJ is obliged to ascertain the demands of the claimant's former work and to compare those demands with present capacity."). The ALJ may utilize a VE to assist in this determination. 20 C.F.R. § 404.1560(b)(2).

When a VE provides evidence about the requirements of a claimant's past job, the ALJ has "an affirmative responsibility to ask about any possible conflict" between that testimony and the DOT, and to obtain a reasonable explanation for any deviation. SSR 00-4p. An ALJ does not make the requisite factual findings if she fails to inquire whether the VE's testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's testimony regarding "the requirements of a job or occupation" conflicts with the DOT). The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, the ALJ must first determine whether a conflict exists, and if it does, he must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id. (where a VE's testimony apparently conflicts with the DOT, the ALJ "must resolve this conflict" before relying on the VE's testimony and "must explain the resolution of the conflict irrespective of how the conflict was identified"). Accordingly, where a VE incorrectly testifies there is no conflict, but evidence from a VE appears to conflict with the DOT, SSR 00-4p requires further inquiry: an ALJ must "obtain a reasonable explanation for any apparent conflict." Massachi, 486 F.3d at 1152-53 (citing SSR 00-4p). The ALJ errs if she fails to obtain a reasonable explanation to resolve an apparent conflict -- even if the VE did not identify the conflict. Hernandez v. Astrue, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011); Mkhitaryan v. Astrue, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010).

Only after determining whether the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context). An "ALJ's failure to resolve an apparent inconsistency may leave us with a gap in the record that precludes us from determining whether the ALJ's decision is supported by substantial evidence." Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015). An ALJ's failure to resolve an apparent conflict cannot be deemed harmless if the VE's testimony left "unresolved potential inconsistenc[ies] in the

evidence." Massachi, 486 F.3d at 1153, 1154 n.19 (alteration in original).

**C. ANALYSIS**

In response to the ALJ's hypothetical, the VE testified that an individual could perform plaintiff's past relevant work as a security guard as generally performed. The DOT description for the position of security guard provides the following:

> Language: Level 2 - READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end punc[t]uation, and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct punc[t]uation, variations in word order, using present, perfect, and future tenses.

DOT No. 372.667-038.

Relying in part on Pinto, plaintiff notes that the ALJ never specified plaintiff's language ability other than to ask the ALJ to assume an individual with the same age and educational background as plaintiff, and contends that the VE's testimony that plaintiff can perform the work of a security guard as generally performed is an apparent deviation from the DOT job description for that job, which has a Language Level of 2. [JS at 7-8.] Additionally, according to plaintiff, plaintiff's second grade education alone raises a conflict between his marginal educational level ("marginal" is considered to be formal schooling at the 6th grade level or less) and the Language Level 2 job requirements. [JS at 8 (citing 20 C.F.R. § 404.1564; Aranda v. Astrue, 2013 WL 663571 (C.D. Cal. Feb. 22, 2013)).] Plaintiff submits that the VE's testimony deviates from the DOT without explanation, and the ALJ's determination that he could perform his previous work as a security guard as generally performed "lacks the support of substantial evidence and is a result of legal error." [JS at 9.] He notes that at all relevant times he has been considered to be "an individual of at least advanced age, i.e., 55 and over, limited to light work, and illiterate" and, therefore, if he cannot perform his past relevant work as generally performed, he is disabled pursuant to Medical Vocational Rule 202.02. [Id.]

9

The Commissioner argues that plaintiff performed his past work as a security guard for over a decade and had passed the California State Guard examination, and the "simple fact that [he] primarily speaks Spanish does not preclude him from work as a security guard." [JS at 10.] Defendant attempts to distinguish Pinto on the ground that it "specifically did not consider whether literacy can be considered at step four because the argument was not raised in prior proceedings." [Id.] Here, on the other hand, defendant is making the "argument at the outset" that a "proper reading of the regulations shows education and language ability are vocational factors that 'will not' be considered until step five of the sequential process," and plaintiff's literacy in English is "inapplicable to the step four determination of whether [he] is able to perform his past work." [Id.] Furthermore, defendant deems Pinto distinguishable because, in this case, the ALJ referenced plaintiff's vocational profile in general, but did not specifically reference plaintiff's language skills in the hypothetical or include a discussion of language skills in the step four analysis. [JS at 12.] The Ninth Circuit in Pinto, however, declined "to address the Commissioner's argument that literacy should not have been considered at step four, finding that because the ALJ '*did* in fact refer to [claimant's] limited language abilities at step four,' remand for clarification of how the language skills factored into the disability determination was warranted." [JS at 12 (quoting Pinto, 249 F.3d at 848).] Defendant further argues that plaintiff's contention that the VE's testimony is a deviation from the DOT without explanation is "factually wrong, because the [VE's] testimony was based on the hypothetical question and facts presented; it did not include limitations regarding Plaintiff's skills in the English language." [JS at 11.] Defendant contends that the Commissioner's regulations also specifically provide that the ALJ will not consider the vocational factor of education at step four, and that the "ability to read and write in English is considered an educational factor" and is considered only at step five. [JS at 13 (citing 20 C.F.R. § 404.1560(b)(3)).] Defendant argues that even if literacy is to be considered at step four, any error is harmless because "Plaintiff lacks any severe mental impairment, has over a decade of experience as a security guard, and passed the California State Guard exam." [JS at 15-16 (citations omitted).] Finally, citing a Seventh Circuit case, defendant contends that "Courts have been suspect over the DOT literacy requirements, which appear to deem any person who does not speak English or have impressive

reading abilities, disabled." [JS at 16 (citing Donohue v. Barnhart, 279 F.3d 441, 445 (7th Cir. 2002)).]

Defendant's arguments miss the point. Plaintiff asserts that the ALJ erred at step four because the VE's testimony *conflicted* with the DOT, and as a result the ALJ and this Court must consider Plaintiff's language ability. Pinto, 249 F.3d at 846-47 (finding the ALJ erred in "fail[ing] to explain how th[e English literacy] limitation related to [the ALJ's] finding" that plaintiff could perform her past relevant work as generally performed at step four); Chaoprasrihomkhao v. Berryhill, 2018 WL 287303, at*4 n.3 (E.D. Cal. Jan. 4, 2018) (noting "both the ALJ and the Court must consider [p]laintiff's language ability" despite Commissioner's argument that the ALJ was not required to consider plaintiff's language ability at step four, because plaintiff also asserted the ALJ erred in relying on the VE's testimony that *conflicted* with the DOT). In Pinto, the Ninth Circuit declined to decide whether an ALJ is always required to consider a claimant's language skills at Step Four of the sequential evaluation. Pinto, 249 F.3d at 847 n.5 ("It is unclear whether the ALJ should have considered [claimant's] language skills at all at step four, given that [claimant's] difficulties with language are independent of the disability upon which she bases her claim. We decline to reach the question of whether illiteracy may properly be considered at step four of a disability determination."). Nevertheless, the court in Pinto indicated that when an ALJ relies upon a DOT description regarding how a job is *generally* performed at Step Four, where illiteracy or a language limitation creates a conflict with the DOT's description, the ALJ must explain any such deviation. Id. at 847 ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."). The court in Pinto also acknowledged that it did not "suggest that applicants who are illiterate are entitled to a finding in step four of the disability proceeding that they are disabled." Pinto, 249 F.3d at 847.

Social Security regulations also take into account English literacy and the ability to communicate in English when determining a claimant's education as a vocational factor. 20 C.F.R. § 404.1564(b)(5). The ability to communicate in English is specifically important because "English is the dominant language of [this] country" and as such, retaining a job may be difficult

for someone without English skills "regardless of the amount of education the person may have in another language." Id. It is the Commissioner's burden to establish that a claimant is literate in English. Silveira v. Apfel, 204 F.3d 1257, 1261 (9th Cir. 2000) (en banc).

Here, plaintiff's form Disability Report-Adult indicates that he cannot speak and understand English, read and understand English, or write more than his name in English, and notes that his preferred language is Spanish. [AR at 190.] Plaintiff required an interpreter during the hearing, as well as during his consultative examination, and it appears that his daughter accompanied him to some of his medical visits to provide the treating physician with relevant information. [AR at 48, 248; see, e.g., AR at 407, 410, 415.] This evidence is undisputed.

Despite the well-documented record of plaintiff's English literacy limitations as noted at the hearing and elsewhere in the record, the ALJ failed to determine whether or not plaintiff was literate in English. The ALJ then compounded this failure by referring only generally to plaintiff's educational background but omitting any reference to plaintiff's limited language skills in the hypotheticals presented to the VE. Where the ALJ "fails to present hypotheticals to the VE that accurately reflect all of the claimant's relevant characteristics, it does not become the VE's burden to correct the ALJ and utilize characteristics that the VE observes at the hearing," i.e., the use of an interpreter. Kim v. Berryhill, 2018 WL 626206, at *7 (C.D. Cal. Jan. 30, 2018) (citation and internal quotation marks omitted).

Thus, there is an apparent conflict between the DOT and the VE's testimony that plaintiff could perform his past relevant work as a security guard as *generally* performed, which requires a Language Level of 2. Pinto, 249 F.3d at 846 ("Another matter of concern is the ALJ's failure to clarify how [plaintiff's] language and literacy abilities factored into his analysis that [plaintiff] could perform her past relevant work, given that the [DOT] description required language ability above that possessed by [plaintiff]."). Moreover, the ALJ erred in failing to obtain a reasonable explanation to resolve the apparent conflict. This unresolved conflict is particularly significant because of plaintiff's age category; the ALJ's failure to resolve this apparent conflict cannot be deemed harmless because the VE's testimony left "unresolved potential inconsistenc[ies] in the evidence." Massachi, 486 F.3d at 1153, 1154 n.19 (alteration in original).

# VI.

# REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall make a determination regarding plaintiff's literacy in English and his ability to communicate in English. Second, given plaintiff's RFC and the ALJ's determination regarding plaintiff's literacy and ability to communicate in English, the ALJ shall determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing his past relevant work as a security guard, as generally performed.[7] If plaintiff is not so capable or, if applicable, the ALJ determines to make an alternative finding at step five, then the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform.

/

/

/

---

[7] Other than making a determination with respect to his English literacy, nothing herein is intended to otherwise disrupt the ALJ's March 28, 2017, RFC determination or her implicit determination, based on the VE's testimony [AR 80-81], that plaintiff cannot perform his past relevant work as a security guard as actually performed. [AR at 31, 80-81.]

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  January 22, 2019

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE